WHITMORE STONEWALL PHILLIPS, ALIAS STONEY PHILLIPS, v. THE STATE.

No. 15904. Delivered May 24, 1933.
Rehearing Denied June 21, 1933.
Reported in 61 S. W. (2d) 117.

The opinion states the case.

*Simpson & Brewster* and *Garland Flowers,* all of Fort Worth, and *Bryan H. Atchison,* of Breckenridge, for appellant.

*Jesse Martin,* Dist. Atty., of Fort Worth, *Ben J Dean,* Dist. Atty., of Breckenridge, *H. C. Wade,* Asst. Dist. Atty., and *Hiner & Pannill,* all of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; punishment, 99 years in the penitentiary.

The appellant was indicted by the grand jury of Tarrant County for the unlawful killing of one E. L. Churchill, and upon application of the appellant for a change of venue the case was transferred from Tarrant County to Stephens County.

The evidence shows that the appellant killed the said E. L. Churchill on March 14, 1932, in the Metropolitan Hotel in Fort Worth, Texas. The appellant's business was that of a distributor of novelties and he kept his novelties in a room adjoining the lobby of the Metropolitan Hotel. For some time prior to the killing, appellant had been going with and keeping company with one Miss Sally Moore, who was a public stenographer in the hotel, and had become engaged to her. The deceased Churchill was an oil operator and for some time prior to the killing had been living at the Metropolitan Hotel but had been away for a short time prior to the homicide, returning about two days before the killing.

Mrs. Minnie Torbett, a witness for the state, testified to the following effect: She went into the Metropolitan Hotel about 3

or 3:30 o'clock on the day of the killing and saw the deceased and Miss Moore sitting at Miss Moore's desk talking together. The appellant came into the room and spoke to her and then went on out into the lobby. About 15 minutes later he returned and Miss Moore told him there was a package in the lobby for him that came by mail. The appellant then said to Miss Moore, "You are going to get a package from me but it will not come through the mail." The deceased objected to this and took the appellant by the arm and led him towards the ladies' writing room. He did not go to the street entrance with the appellant and did not strike or hit him but merely told him not to talk that way to his friends. The appellant then went out the side door and the witness and Miss Moore left the hotel. When they got back to the hotel, they learned that the shooting had occurred.

The state's testimony further shows that upon leaving the hotel, the appellant went to a pawn shop and rented a pistol. He then went to a garage near the hotel and loaded the pistol and stated to a state's witness there that he was going to kill a man because of an insult recently perpetrated upon him; that he hated to do it but he was going to have to kill him. He then walked to the hotel and went directly to the deceased, who was talking to the clerk, R. L. Watson, at the clerk's desk. The appellant placed his arm on deceased's shoulder and said something to him, the exact words of which the state's witnesses were unable to testify to further than that it was something about the appellant apologizing to the deceased. When the appellant placed his hand on deceased's shoulder and while the conversation was going on between them, he felt around deceased's person. The deceased pushed the appellant away from him and told him he did not want to have anything to do with him. The appellant then stepped back, drew his pistol, and fired at the deceased. Deceased fell to the floor in the lobby and the appellant continued to fire some four or five shots inflicting wounds upon the deceased from which the deceased died. The appellant then left the hotel and went to a garage in that vicinity and stated to a city detective that he had just killed a man and put six slugs in the son of a b—.

Appellant's defense was that he acted in self-defense. He testified that about a year and a half before the killing he had purchased some cigarettes at the Metropolitan Hotel and made some remark to the girl at the stand; that the deceased was talking to the girl at the time and said to the appellant, "Get out of here, you smart Alec. We don't care for your remarks,"

and made an advance towards him; that he did not want to have any trouble with the deceased because he was drinking so he left. He further testified that about 3 or 4 months prior to the killing, Miss Moore told him that the deceased had told her that if she was scared to quit going with the appellant that he would take care of that, but that he had said nothing to the deceased in regard to said matter as he did not want to have any trouble with him. He further testified that when he made the remark to Miss Moore about the package coming through the mail he merely meant that he wanted to talk to her about being out with the deceased the Saturday night before; that after he had made the remark to Miss Moore, the deceased grabbed him by the arm and shoulder and twisted his arm behind him and said, "Get out of this hotel, you dirty s— o— b—, and never come around here while I am here any more." He then turned him loose and as he went out the door the deceased kicked him and told him that if he came back he would have him carried out; that he again met the deceased on the sidewalk in front of the hotel and the deceased said, "God damn you, I meant just what I said." He then decided to get a gun and come back to the hotel and get his stuff and stay out of there. That when he came back to the hotel he walked up to the deceased and put his arm on his shoulder and said, "Let's call things square and make friends"; that when he did this, the deceased hit him and knocked him out of the way and said, "You get out of here, G—d— you," and then reached back and he thought he was going to get a pistol and he stepped back and started firing.

The appellant excepted to the refusal of the court to charge the jury that he would have the right to shoot to kill to prevent the inflicting of death of himself at the hands of the deceased or at the hands of R. L. Watson, if the jury found and believed from the evidence or had a reasonable doubt thereof that it reasonably appeared to the defendant at the time viewed from his standpoint alone that he was in imminent danger of being killed by the deceased or by the deceased and the said R. L. Watson acting in conjunction with each other to kill the defendant. Appellant contends that the evidence showed that deceased and R. L. Watson had entered into a conspiracy against appellant and that the evidence showed that Watson was a principal in the deceased's attack upon the appellant and it was not necessary that Watson do some overt act at the time of the killing to entitle appellant to a charge on the right of self-defense against the deceased acting either alone or in conjunc-

tion with Watson because the act of the deceased was the act of Watson.

It has always been the rule in this state that if a defendant presents an affirmative defense it is the duty of the trial court to present this defense in an affirmative charge. We do not believe that the facts of this case bring the instant case within the rule. The appellant's own testimony shows that he and Watson had been friends for 8 or 10 years. There was no evidence to show that Watson had any particular interest in the deceased or that he was interested in Miss Moore. The appellant's own testimony further shows that the only trouble he had ever had with Watson was on the Saturday night before the killing, which occurred on Monday. The appellant had been out with Miss Moore from about 6 to 8 o'clock that evening and had left her at her house. He later tried to get her on the telephone but she was not at home and when he called a Mrs. Gifford's residence Watson answered the phone and told him that he had the wrong number. Later while he was standing in front of the hotel he saw Miss Moore drive up in a car with Watson and the deceased. Watson got out and the deceased and Miss Moore drove off. When Watson came across the street to where he was, he told Watson that he was a fine friend to be taking his girl out with somebody else like that and knowing all about those deadhead telephone calls he had been making with Mrs. Gifford. Watson then grabbed him and cursed him and shook him against the building and said he ought to murder him; that he, the appellant, then told Watson that he, Watson, was drunk and would be sorry for it tomorrow. Watson then released him, and, as he started walking down the street, Watson grabbed him and hit him on the shoulder and kicked him. The evidence shows that at the time appellant came into the hotel immediately before the shooting Watson was behind the desk in the place where the clerk usually stood. The appellant testified that when he started firing at the deceased, Watson ducked down behind the desk and he was afraid he was going to get a gun that was usually kept there and that after he shot the deceased he fired at the desk behind which Watson was to frighten him and to keep him down until he he could run out; that he didn't intend to hit Watson. The appellant did not testify that Watson was doing anything or that he said or did anything before or during the shooting or that he was making any act or demonstration towards the appellant.

If the fact that the mere presence of Watson at the time of the shooting without doing anything except to dodge down

behind the clerk's desk when the shooting began would support the theory that the said Watson had entered into a conspiracy with deceased to kill or injure the appellant, it would be equally true that any other person who was present on the occasion might have been deemed to have conspired with and encouraged deceased in shoving appellant's hand from his shoulder and shoving and striking the appellant just before the shooting. We apprehend that the learned trial judge in refusing a special charge must have done so on the ground that fairly construed the entire evidence did not raise the issue in such a way as to require an affirmative submission of the charge requested. After considering all the evidence from the standpoint of the appellant, we do not believe the issue as presented in the requested charge was sufficiently raised by the evidence to require its submission. The evidence at the most does no more than raise the suspicion that Watson might have conspired with the deceased. A mere suspicion without any facts to support it does not rise to the dignity of an affirmative defense. See Bohannon v. State, 273 S. W., 262; Bridges v. State, 102 Texas Crim. Rep., 462. Under the record before us, we believe that every right that appellant had under the facts of this case was fully protected by the court's charge on self-defense, which contained a general charge on the right of self-defense and then included the following: "You are charged that if you believe that at the time of and immediately preceding the homicide, that from the words, gestures or acts or both, or either, of the deceased when taken alone or in connection with all, or any of the facts and circumstances in evidence, there was created in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, viewed from the standpoint of the defendant at said time, and you believe that, acting upon the said reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, that the defendant shot, thereby killing the deceased, or if you have a reasonable doubt thereof, you will find the defendant not guilty."

Appellant also excepted and objected to paragraphs 13 and 14 of the the court's charge because they were too restrictive of the rights of the appellant because they unduly limited his right to kill the deceased and allowed the jury to find that he was justified in so doing only in the event that the threats had been previously made and under the law he had the right to kill the deceased to prevent death or serious bodily harm even if the jury should believe that no threats had been previously

made. Paragraphs 13 and 14 of the court's charge are as follows:

"You are further instructed that where a person is charged with the offense of murder, and seeks to justify himself, on the ground of threats made against his own life, or of serious bodily injury to him, he is permitted, under the law, to introduce evidence of such threats, but the same shall not be considered as a justification for the killing unless the person killed, by some act then done, or by his conduct or by his words, manifested an immediate intention to execute the threat or threats so made. In order to justify the defendant in taking the life of the deceased, it must appear at the time of the homicide that the deceased did some act, or his conduct was such, that it was reasonably calculated, in view of all the circumstances, to produce in the mind of the defendant the belief that the deceased was then about to execute the threats so made.

"You are charged that if the deceased had made threats against the life of the defendant, and the said threats had been communicated to the defendant, and at the time of the homicide the deceased did some act, or his conduct was such, that it was reasonably calculated, in view of all the circumstances, to produce in the mind of the defendant the belief that the deceased was then about to execute the threats so made, there was created in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, viewed from the standpoint of the defendant at the time, and you believe that, acting upon said reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, that the defendant shot, and thereby killed the deceased; or if you have a reasonable doubt thereof, you will find the defendant not guilty."

We do not think that there was any evidence showing that the deceased had made any threats against the appellant except as testified to by the appellant as made to him and the statement made by the deceased to Miss Moore could not in itself be considered as a threat. There was no issue made in regard to said threats. The state did not attempt to contradict the testimony of the appellant or of Miss Moore as to any statements that might have been made by the deceased concerning the appellant. If it should be conceded that the court in his charge upon threats was incorrect in the matter in some respects, taking the charge as a whole we are not led to believe that the charge as given could under the testimony have affected appellant's rights. Hence, under the provisions of article

666, C. C. P., we would not be warranted in ordering a reversal.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—On the original hearing the members of this court, so far as they were capable of doing so, became familiar with the facts and legal questions involved in the appeal. The opinion reflects the views of the court.

In a very elaborate motion for rehearing, counsel for the appellant contends that the affirmance of the judgment shows that the trial court and this court had decided against the appellant on two issues of fact, namely; first, that the appellant did not believe that Watson was making or preparing to make an attack upon him; and, second, that the appellant had no reasonable ground for such belief. The charge and the rulings of the learned trial judge carry the implication that after hearing the evidence the trial judge formed the conclusion from the evidence that there was before the jury no fact or circumstance which would support the contention of the appellant that Watson was a conspirator against the appellant, and that there was no evidence sufficient to create or support a finding by the jury that the appellant had good reason to believe and did believe that Watson was a conspirator. In our opinion, such finding by the trial court is justified by the evidence. From the appellant's own testimony as understood, the only act of Watson at the time of the tragedy upon which the contention mentioned could be founded is that when Churchill was shot to death by the appellant, Watson dodged under the counter and was fired upon by the appellant. The testimony of the appellant upon which he relies is quoted in the motion. No evidence appears that at the time of the tragedy Watson did or attempted any hostile act.

Several days prior to the homicide, the appellant became incensed at Watson and upbraided him upon learning that he, Churchill, and Miss Moore had been together. A detailed statement of the appellant's version of the affair and the surrounding circumstances is set out in the original opinion. A repetition of it here is deemed unnecessary.

Upon the record made upon the trial and in the light of the

appellant's brief and motion for rehearing, we are constrained to regard the conclusion reached and stated in the original opinion, namely, that nothing is disclosed which would warrant this court in setting aside the verdict supported, as it is, by the evidence before the jury, guided and directed under the law embraced in the charge of the court and upheld in the motion for new trial by the learned trial judge who tried the case.

The motion for rehearing is overruled.

*Overruled.*